UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PARK MILLER, LLC, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>DURHAM GROUP, LTD., et al.,<br><br>    Defendants. | Case No. 19-cv-04185-WHO<br><br>**ORDER GRANTING IN PART DENYING IN PART REQUEST FOR DAMAGES AND ATTORNEYS' FEES; DENYING REQUEST FOR DISCOVERY**<br><br>Re: Dkt. No. 68 |

On October 13, 2020, I granted Park Miller LLC ("Park Miller"), a wealth advisory firm, and its clients (the "Contracting Plaintiffs") (collectively plaintiffs) default judgment against defendants Durham Group, Ltd. ("DGL") and Durham Commercial Capital Corp ("DCC"). Order Granting Motion for Default Judgment ("Default Judgment Order") [Dkt. No. 66].[1]  However, in order to obtain a judgment in the amount sought, I found that plaintiffs must provide further information about the damages suffered and attorneys' fees and costs incurred. *Id.* at 4–6.

I granted in part and denied in part their request for discovery, ordering them to "resubmit proposed *limited* discovery in support of the specific form of judgment it seeks." *Id.* at 7.  I was inclined to allow plaintiffs to "subpoena Craig McGrain for deposition with no more than five document requests that are narrowly tailored to the defendants' financial state and/or its request for punitive damages, and to propound up to five interrogatories and five document requests to DGL and DCC, similarly narrowly tailored." *Id.*

Before me is plaintiffs' second supplemental brief in support of their request for damages, attorneys' fees, and discovery.  Second Supplemental Memorandum in Support of Application For

---

[1] My previous order detailed the background of this case, which I incorporate by reference here. Default Judgment Order at 1–2.

Entry of Default Against Durham Group Limited and Durham Commercial Capital ("Second Suppl. Mot.") [Dkt. No. 68-4]. I have also received two letters from Craig McGrain, objecting to further involvement in this case. [Dkt. Nos. 67, 69].

After three rounds, some of the deficiencies previously identified have been adequately fixed while others still persist. Plaintiffs' request for damages and attorneys' fees is GRANTED in part and DENIED in part and their request for discovery is DENIED.

## I.     DAMAGES REQUESTED

### A.     Contract Damages

The Contracting Plaintiffs claim to have suffered $4,200,000 in damages for breach of the underlying promissory notes, in addition to $1,583,946.75 in interest. Second Suppl. Mot. 2. Together, they request $5,997,390.11 in contract damages. *Id.*

In my previous order, I found that Contracting Plaintiffs provided "no evidentiary support for [their] assertions that (i) none of the sums loaned had been repaid as of the default, (ii) the defendants defaulted on all of the notes on December 1, 2018, and (iii) as of the default, the principal on every note had been transferred to the 'Operating Account,' which triggered a higher interest rate." Default Judgment Order 4. I instructed Contracting Plaintiffs to "provide a declaration certifying that this information is true." *Id.*

In his second supplemental declaration, John Miller, a Principal at Park Miller, asserts the following: "Defendants defaulted on all promissory notes on December 1, 2018, as was required under each of the notes. Park Miller did not receive any letter or confirmations of payment in December 2018. Park Miller confirmed with each of its clients that Defendants did not make an interest payment in December 2018. Defendant[s] have not paid interest or made any payments on any promissory notes since December 2018." Declaration of John Miller in Support of Second Supplemental Memorandum ("Miller Decl.") [Dkt. No. 68-1] ¶ 12.

He further states that "Park Miller received a copy of the letter [DGL] sent to each client monthly with interest calculation and payment, and that "[t]he last letters that Park Miller received were in November 2018," which "reflected the amount of the principal each client had invested with Defendants and broke down the amount that was in the Holding Account and the amount that

was in the Operating Account." *Id.* ¶ 10; *see also id.* ¶ 11 (table with each client's principal, Holding Account and Operating Account amounts).  The November 2018 letters "also reflect that none of the principal was paid back on any of the promissory notes."  *Id.* ¶ 10.  Copies of the November 2018 letters are attached to the declaration.  *See* Exs. H–N.  This declaration fixes the deficiencies I previously identified.

Contracting Plaintiffs also ask for $213,443.36 in liquated damages based on the following provision in the promissory notes:

> In the event that any payment required to be made under this note shall not have been received by the holder of this note with ten (10) days after the date on which it is due, a "late charge" of five cents ($.05) for each one ($1.00) dollar so overdue shall become immediately due to the Holder as liquidated damages for failure to make prompt payment. (Said charge shall be payment in any event on the due date of the next payment requited to be made hereunder.)

Miller Decl., Exs. A–G.  This argument was not raised in either of the two earlier motions.  In any event, I find that contract damages in the form of unpaid principal and interest provide Contract Plaintiffs with complete relief.

Contract Plaintiffs are entitled to $5,715,079.50 in contract damages ($4,200,000 in principal amount plus $1,515,079.50 in interest).[2]

### B. Tort Damages

Park Miller asserts that it suffered damages as a result of the defendants' intentional interference with contractual relations and negligent interference with prospective economic relations. Second Suppl. Mot. 7.  It claims that it lost eight clients due to these wrongful actions, resulting in $1,750,680.20 in damages.  *Id.* at 8.  It lost $4,597.91 as a result of refunding fees to its clients associated with the defendants' investment accounts and an additional $23,750.00 for the clients that have stayed with it.  *Id.*  In addition, it faces "several threatened lawsuits" from former clients as a result of the defendants' actions in the amount of over $4,000,000.00 in

---

[2] $68,867.25 is the total interest due each month on all the promissory notes.  Contracting Plaintiffs previously calculated 22 months of interest due, between the December 2018 default and October 2020.  In their second supplemental motion, Contracting Plaintiffs calculate interest for 23 months, between December 2018 and November 2020, for a total of $1,583,946.75 in interest due ($68,867.25 x 23).  I find that a 22-month calculation of interest is reasonable given that default was entered in October 2020, reducing the total interest amount to $1,515,079.50 ($68,867.25 x 22).

3

potential liability. *Id.* at 9. Together, it argues that the total amount of losses sustained is $1,779,022.11, in addition to potential liability of over $4,000,000.00.

I previously told Park Miller that general assertions of total damages do not suffice and that it "must provide evidentiary support for its statements that it lost clients, refunded fees to existing clients, and faces lawsuits from clients stemming from the defendants' wrongful conduct." Default Judgment Order 5. Specifically, I told Park Miller that it must "explain how each amount was calculated, provide evidentiary support for its losses, and provide support for its contention that these losses resulted from the defendants' conduct as alleged in the complaint." *Id.* "In addition, Park Miller must provide further information regarding the lawsuits that it faces and why damages resulting from such lawsuits would not run afoul of the election of remedies doctrine." *Id.*

Park Miller has provided evidentiary support for the fees it refunded to existing clients. The claim that it refunded $4,597.91 in fees associated with any investments with defendants is supported by the record of returns attached to Miller's second supplemental declaration. *See* Miller Decl. ¶ 19 & Ex. O (list of refunded fees, with account numbers and client names partially redacted).

It fails, however, to do the same with respect to damages sustained due to lost clients and lost revenue from the Durham investments. It conclusorily asserts that it suffered $175,068.02 in yearly revenues from lost clients, and then based on an estimation that those clients would have remained clients for at least ten years it calculates its total loss as $1,750,680.20. Miller Decl. ¶ 19. It also conclusorily claims that "[f]or the clients we retained, the lost revenue to us from the loss of the Durham investments is $23,750 per year." *Id.* ¶ 18. Nothing in the motion or attached declarations explains how these amounts were calculated or provides evidentiary support for these losses.

It similarly fails to provide sufficient support for the lawsuits it faces from former clients. It only points to a declaration from attorney Richard Bowles, who represented it in a mediation with "some of [Park Miller's] clients who invested with Defendants in this action" and "sought over $4,925,000.00 in recovery" from Park Miller. Declaration of Richard T. Bowles in Support

of Second Supplemental Memorandum ("Bowles Decl.") [Dkt. No. 68-3] ¶ 2.  It is unclear who these other clients are and how they are connected to defendants conduct in this lawsuit.  No other evidentiary support is provided about that particular mediation.

The Bowles declaration points to another set of actions brought by Kevin Hagan, a former Park Miller client, who "seeks in excess of $4,000,000.00" and who originally brought a demand for arbitration against Park Miller, filed suit in the District of Hawaii against it, and most recently brought a motion to compel arbitration in this District.  *Id.* ¶ 3; *see also id.*, Exs. A–C (copies of the arbitration demand, and complaints filed in District of Hawaii, and in this District).

Copies of the arbitration demand and complaints reveal some connection to defendants' conduct.  *See* Bowles Decl., Ex. A at 3 (Statement of Claim filed December 10, 2019 before the American Arbitration Association, alleging "[h]ad the Hagans been informed of the inherent risks with Durham, they never would have agreed to loan, over the next 6 years, $4 million to Durham . . . [who] default[ed] in or around December of 2018 resulting in a complete and total loss of the Hagan's principal investment"); *id.*, Ex. C ¶ 23 (alleging the same in Complaint filed April 13, 2020 in District of Hawaii, Case. No. 20-cv-157); *id.*, Ex. B ¶¶ 14–17 (alleging the same in Complaint For Motion to Compel Arbitration filed September 30, 2020 in this District, Case No. 20-cv-6818-CRB; after Park Miller objected to the Hawaii action "on venue grounds," Hagan agreed to dismiss the Hawaii action without prejudice  and subsequently sought relief from this District).

Based on these attached documents, there is some evidentiary support that the *Hagan* lawsuit is related to defendants' conduct.  But this just shows *one* client lawsuit Park Miller is facing, not "several threatened lawsuits."  Second Suppl. Mot. 8.  Park Miller also does not give an exact figure in damages it seeks from this threatened lawsuit; it simply says that it faces potential liability of over $4 million.  It appears more appropriate that Park Miller seek indemnification in the *Hagan* lawsuit from the parties directly responsible as opposed to pursuing some arbitrary and unspecified amount of damages due to potential liability in this case.

Accordingly, Park Miller has only shown that it is entitled to $4,597.91 in tort damages for the fees it refunded to clients associated with the Durham investments.

### C. Attorneys' Fees and Costs

Plaintiffs previously asserted that they incurred a certain amount in attorneys' fees and court costs but failed to provide any "further break-down of these fees and costs." Default Judgment Order 5. In order to recover these fees, I found that plaintiffs "must provide a legal basis for the attorneys' fees and costs, as well as detailed information regarding this request, including what costs were incurred, attorney billing rates, and the hours worked on particular tasks for this matter." *Id.* at 5–6.

In their second supplemental motion, plaintiffs claim that they "incurred $140,939.50 in attorneys' fees with Bowles & Verna for the various matters," "$3,486.54 in fees for counsel in Hawaii," and "additional attorneys' fees in the amount of $99,500.00 when they hired Jack Rose to form an Ad Hoc Committee in order to resolve the disputes over Defendants' default on the promissory notes," amounting to a total of $243,926.04. Second Suppl. Mot. 9.

Plaintiffs have provided evidentiary support for the fees incurred with Bowles & Verna. *See* Bowles Decl. ¶ 4 & Ex. D (detailed time records between April 2019 and August 2020 documenting the tasks completed and the time spent). I find that Richard Bowles' $450 hourly rate and Alexandra M. Tomp's $320 and $310 hourly rates are reasonable. This supports a finding for the $140,939.50 incurred in fees.

Plaintiffs do not seek recovery of any court costs in the second supplemental motion. Bowles' declaration mentions that it incurred $4,577.80 in court costs, but there is no breakdown or explanation provided for that amount.

For counsel in Hawaii and Jack Rose, plaintiffs have only provided a conclusory declaration and no further breakdown of the fees. *See* Declaration of Stuart Park in Support of Second Supplemental Memorandum ("Park Decl.") [Dkt. No. 68-2] ¶ 8 ("In addition to the attorneys' fees incurred through Bowles & Verna, $99,500.00 in attorneys' fees for an Ad Hoc Committee was also incurred" and "[w]e also paid Hawaii counsel, Bays, Lung & Holma $3,486.54 in conjunction with the filing in Hawaii."); *id.*, Ex. H (January 22, 2020 email from Jack Rose stating that "The total amount of funds received by this firm on this matter was: $99,500.00"). This is not a sufficient basis to allow me to award damages, let alone attorneys'

1  fees.

2  Plaintiffs have shown that they are entitled to $140,939.50 in attorneys' fees associated
3  with Bowles & Verna.

4  **II.    REQUEST FOR DISCOVERY**

5  Plaintiffs previously requested discovery "related to punitive damages, as well as to DGL
6  and DCC's assertions that they are insolvent." Default Judgment Order 6. I found the requests
7  were "far from narrowly tailored" because it included 50 interrogatories and 71 document
8  requests, "which request broad information such as the identity of all of the defendants' employees
9  for the past ten years, all financial records for the past ten years, and all documents related to
10 communications that the defendants had with any person affiliated with 1-800 SOLAR." *Id.* I
11 told plaintiffs to "resubmit proposed limited discovery in support of the specific form of judgment
12 it seeks" and that the requests should be "narrowly tailored to the defendants' financial state
13 and/or its request for punitive damages." *Id.* at 7.

14 Plaintiffs now resubmit discovery "in support of effectuating judgment." Second Suppl.
15 Mot. 10. As such, they no longer seek discovery related to punitive damages sought before.

16 Plaintiffs remain entitled to discovery to enforce the judgment, but that is not what they
17 ask for here. Their proposed document requests and interrogatories reduce the number of requests,
18 but the requests themselves remain just as broad as before, if not broader. In some instances, they
19 have simply combined two previous broad requests for documents or interrogatories into one
20 similarly broad request. *See id.*, Exs. 1–5; *see, e.g.*, Ex. 1 at 4 ("Any and all of your organizational
21 documents and documents related to your organizational documents for the last ten (10) years";
22 "Any and all of your financial records for the last ten (10) years"; "Any and all documents related
23 to 1-800 Solar, including but not limited to communications you had with any person affiliated
24 with 1-800 Solar").

25 After three failed attempts to adequately describe the specific discovery needed to
26 effectuate judgment, plaintiffs request for discovery is DENIED.

27 **CONCLUSION**

28 Plaintiffs' request for damages and attorneys' fees is GRANTED as follows: (i) contract

7

1 damages to Contracting Plaintiffs in the amount of **$5,715,079.50** ($4,200,000.00 in principal amount plus $1,515,079.50 in interest); (ii) tort damages to Park Miller in the amount of **$4,597.91** for refunding fees to lost clients; (iii) attorneys' fees in the amount of **$140,939.50**  to Bowles & Verna LLP.  Plaintiffs' remaining requests for damages and attorneys' fees, as well as their request for discovery, are DENIED.

**IT IS SO ORDERED.**

Dated: December 17, 2020


William H. Orrick
United States District Judge